UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO
Honorable Howard R. Tallman

| | |
|---|---|
| In re: ) | |
| ) | Bankruptcy Case No. |
| OAI QUANG LUONG and ) | 11-33875-HRT |
| HOLLY HOLDEN LUONG, ) | Chapter 7 |
| ) | |
| Debtors. ) | |
| _____ ) | |
| ) | |
| JOHN H. INDERWISH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Adversary Proceeding No. |
| ) | 12-01023-HRT |
| OAI QUANG LUONG, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

**ORDER**

This adversary proceeding concerns representations the Defendant, Oai Luong ("Luong"), made to the Plaintiff, John Inderwish ("Inderwish"), prior to obtaining a $40,000 loan from Mr. Inderwish. Mr. Inderwish alleges that Mr. Luong misrepresented his interest in a $600,000 parcel of land, his approval for a $2,000,000 construction loan, and his ability to draw proceeds from the construction loan in order to induce Mr. Inderwish to loan him $40,000. Mr. Luong never repaid the loan and Mr. Inderwish now asks the Court to find this debt is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A).[1]

**I.      Facts**

Inderwish and Luong met in 2007. Inderwish is an attorney who leased office space in the same office building where Luong, a mortgage broker, operated his business. The two became friends and on one particular occasion in late spring 2008, played a round of golf together at The Country Club at Castle Pines. During this round of golf, Luong showed Inderwish a $600,000 lot adjacent to the golf course, upon which, Luong planned to build a $2,000,000 home. The conversation that ensued is the subject of this adversary proceeding.

---

[1]      Hereinafter, unless otherwise stated, all statutory references shall be to Title 11 of the United States Code.

1

According to Inderwish, Luong represented that he owned the subject lot and had secured a $2,000,000 construction loan to build a home. Luong told Inderwish that he needed $40,000 to break ground and, without this money, he would lose the lot. Luong asked Inderwish for a $40,000 loan and told Inderwish that once he broke ground, he could repay Inderwish with draws from the construction loan. According to Inderwish, he never would have loaned Luong money if he knew Luong did not own the lot. The sole purpose of the loan was to break ground, not purchase a lot.

Luong disputes Inderwish's account of their conversation and alleges he never represented to Inderwish that he owned the subject lot or that he had secured a construction loan. Rather, Luong alleges that he merely showed Inderwish the lot where he planned to build a $2,000,000 home. He told Inderwish that he needed $40,000 to close the loan and begin construction. Luong agrees that he offered to repay Inderwish with draws from the construction loan.

While Inderwish initially declined to loan Luong money, he eventually did. Inderwish withdrew $40,000 from his home equity line of credit and gave the proceeds to Luong. The parties memorialized the terms of the loan, but not Luong's representations, in a promissory note dated June 16, 2008. Under the terms of the note, Luong agreed to pay Inderwish the principal sum of $40,000 plus interest in the predetermined amount of $4,000 by September 1, 2008. This note was unsecured.

Luong used the proceeds from the $40,000 loan to pay a portion of the down payment which was required to close the loan on the $600,000 lot. According to Luong, the entire down payment on the lot was approximately $80,000. Once Luong closed on the lot, he and his builder, Winston Wall ("Wall"), closed on the construction loan. According to Luong, the bank based its decision to approve the $2,000,000 construction loan entirely on its past relationship with Wall. Luong testified that the bank did not inquire into the source of his down payment for the lot or require him to fill out a loan application. According to Luong, the bank performed minimal, if any, due diligence with regard to his finances. Luong also admits that he did not affirmatively disclose to the bank that he borrowed a portion of his down payment for the lot.

With the construction loan approved, Luong moved forward with an architect to design the house. During this time, Luong began to pressure Wall to draw from the construction loan to repay Inderwish. According to Wall, on several occasions, Luong expressed a desire and an urgency to draw from the construction loan to repay Inderwish. However, as Wall explained, the bank would not release loan proceeds to Wall until construction commenced and construction could not commence until the architect completed his plans.

At trial, Luong stated that he made a partial payment to the architect. However, architectural expenses increased as the plans for the house changed from a "Timber" design to a "Tuscan" design. Ultimately, Luong owed the architect $48,000 and the architect would not

2

complete his plans until he was paid. Likewise, Wall could not commence construction until the architectural plans were complete, and the bank would not allow Wall to draw from the construction loan until construction commenced.

In the summer of 2008, with progress on the home at a stand-still and the housing and financial markets in free-fall, the bank decided to freeze the construction loan, and foreclose on the lot. As a result, the home was not built and the bank pursued Wall to recover an estimated $100,000 deficiency from the foreclosure sale.

Following the loss of the construction loan and lot, Luong paid Inderwish $2,500 and the parties continued their attempts to settle the issues concerning the loan; however, Luong made no subsequent payments.

On January 6, 2009, Luong executed a promissory note, under the terms of which Luong agreed to pay Inderwish $45,000, with no interest, by February, 28 2009. Failure to pay in full by that date would subject Luong to $500 penalty each month until he paid in full. Luong did not pay this note.

During the fall of 2009, Luong informed Inderwish that he was working with a tax consultant to recover a substantial refund from the Internal Revenue Service (IRS). Luong offered to repay Inderwish with proceeds from this refund. Ultimately, Luong received about $35,000 from the IRS. Luong did not use proceeds from the tax refund to repay Inderwish. According to Luong, he needed the money to support his family during a difficult economic time.

On April 22, 2011, Inderwish sued Luong in Colorado state court and received a default judgment against Luong for $57,500 for amounts unpaid and owing under the terms of the promissory note.

Luong filed for bankruptcy on October 10, 2011. In response, Inderwish filed the subject Complaint in which he asks the Court to find the amount Luong owes under the promissory note nondischargeabe under § 523(a)(2)(A).

The Court held a trial on Inderwish's Complaint on December 17, 2012. At trial, Inderwish, Luong, and Wall testified about the $40,000 loan, the unsuccessful efforts to construct the $2,000,000 home, and Luong's failure to repay Inderwish. The Court found all three witnesses to be credible. Based on the facts detailed above, the Court analyzes Inderwish's claim for nondischargeability under section 523(a)(2)(A).

**II.      Discussion**

Section 523(a)(2)(A) of the Bankruptcy Code provides that a debt will not be discharged in bankruptcy if it is –

3

> (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by –
>
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.][2]

To establish a nondischargeable claim under § 523(a)(2)(A), a plaintiff must establish the following five elements by a preponderance of the evidence: (1) the defendant made a material false representation, (2) with the intent to deceive the plaintiff, (3) the plaintiff relied on the false representation, (4) the plaintiff's reliance was justifiable, (5) and the defendant's false representation caused the plaintiff to sustain a loss.[3]

The burden of establishing a fact by a preponderance of the evidence "requires the [judge] to believe that the existence of a fact is more probable than its nonexistence before [he] may find in favor of the party who has the burden to persuade the [judge] of the fact's existence."[4] Thus, a preponderance of the evidence is evidence which is more convincing than the evidence offered in opposition to it.[5] In a case where "the evidence is evenly balanced, the [party with the burden of persuasion] must lose."[6] Furthermore, claims brought under § 523 to except debts from discharge are strictly construed against creditors and liberally construed in favor of debtors in bankruptcy.[7]

As the party that shoulders the burden of persuasion, the Court notes that Inderwish lacks any documentary evidence of Luong's representations since those representations were not memorialized in the parties' promissory note, nor was Inderwish able to produce a witness to testify to Luong's representations as the parties were alone when they discussed the terms of their transaction. In a case such as this, where there are equally credible adversaries, but no

---

[2] 11 U.S.C. § 523(a)(2)(A).

[3] *Field v. Mans*, 516 U.S. 59 (1995); *In re Riebesell*, 586 F.3d 782, 789 (10th Cir. 2009).

[4] *Concrete Pipe & Products of Cal., Inc. v. Construction Laborers Pension Trust for Southern Cal.*, 508 U.S. 602, 622, 113 S.Ct. 2264, 2279, 124 L.Ed. 2d 539 (1993).

[5] *Greenwich Collieries v. Director, OWCP*, 990 F.2d 730, 736 (3d Cir. 1993) *aff'd* 512 U.S. 267, 114 S.Ct. 2251, 129 L.Ed. 2d 221 (1994).

[6] *Director, OWCP v. Greenwich Collieries*, 512 U.S. 267, 281 114 S.Ct. 2251, 2259, 129 L.Ed.2d 221 (1994).

[7] *In re Kontrick*, 295 F.3d 724, 736 (7th Cir. 2002); *see also Gullickson v. Brown (In re Brown)*, 108 F.3d 1290, 1292 (10th Cir. 1997).

documentary evidence or third-party eye-witness testimony, the party which shoulders the burden of proof must rely entirely on circumstantial evidence to prove his case.

At trial, Inderwish sought to establish the first and second elements of his claim under § 523(a)(2)(A), Luong's alleged false representation and intend to deceive, through circumstantial evidence. In doing so, Inderwish alleged that Luong had a history of fraudulent conduct. By establishing such a pattern of fraudulent conduct, Inderwish hopes the Court will infer that Luong made similar misrepresentations with fraudulent intent to secure the loan at issue in the present case. Based on the evidence produced by Inderwish, the Court cannot make such an inference.

As part of his case at trial, Inderwish argued that Luong's use of borrowed funds toward his down payment on the $600,000 lot evidences Luong's pattern of fraudulent conduct. However, while Luong testified that such a practice is typically disapproved by banks, Luong also testified that the bank did not ask him about the source of his down payment or otherwise verify the source. According to Luong, the bank did not seem to care about how he obtained his down payment. While it is true that Luong did not affirmatively disclose to the bank that he borrowed a significant portion of his down payment on the lot, the Court heard no evidence that he had a duty to do so or that Luong made any misrepresentation to the bank. Lacking any evidence to the contrary, such as a loan application or other loan documents, the Court cannot find that Luong's use of borrowed funds as a down payment establishes a pattern of fraudulent conduct.

In addition, Inderwish argued that, at the time of his bankruptcy filing, Luong owed another party $20,000. Luong testified that this loan had nothing to do with the down payment on the lot or the construction loan, rather, it was a loan which was intended to help Luong through a difficult economic period. The Court heard no testimony and received no evidence to suggest Luong obtained this loan through fraudulent conduct.

In his final attempt to demonstrate a pattern of fraudulent conduct, Inderwish informed the Court that the tax consultant who worked to obtain the $35,000 tax refund for Luong was a disbarred attorney. While this disbarred attorney may have been guilty of malfeasance in the past, Inderwish presented no evidence that Luong's tax refund was procured through fraudulent means.

In sum, the circumstantial evidence presented by Inderwish fails to establish a pattern of fraudulent conduct which would allow the Court to infer that similar fraudulent conduct occurred here. Furthermore, the most significant piece of circumstantial evidence presented at trial strongly supported the inference that Luong did not make a misrepresentation with the intent to deceive. During his testimony, Wall stated that on several occasions, Luong pressured him to

take a draw from the construction loan so Luong could repay Inderwish. Wall's testimony regarding Luong's efforts to repay Inderwish evidences that Luong, in good faith, believed that he had the ability to pay Inderwish with proceeds from the construction loan. While Luong was ultimately unable to do so, the evidence suggests that, at the time of his representation to Inderwish, Luong did not know that he was incorrect, and thus, lacked the requisite intent to deceive. Therefore, based on the evidence presented at trial, the Court is unable to find that Luong deceived Inderwish or made any misrepresentation to procure the loan. Since Inderwish has failed to establish a misrepresentation with deceitful intent by a preponderance of the evidence, it is unnecessary for the Court to discuss the remaining elements which constitute a claim under §523(a)(2)(A).

Generally, claims based on oral statements do not favor the party shouldering the burden of proof. The Court finds that this case is no different and that Inderwish has failed to carry his burden and prove the elements of his claim by a preponderance of the evidence. Thus, the Court finds that the debt which arose from the subject loan may be discharged.

IT IS THEREFORE ORDERED that the Defendant's debt to the Plaintiff is discharged.

Dated this 4th day of April, 2013.

BY THE COURT:

_Howard Tallman_
Howard R. Tallman, Chief Judge
United States Bankruptcy Court